# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LORI RENEE LAKE,

                1:17-cv-01592-NLH

           Plaintiff,

                **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,
                Defendant.

**APPEARANCES:**

ADRIENNE FREYA JARVIS
800 NORTH KINGS HIGHWAY
SUITE 304
CHERRY HILL, NJ 08034
    On behalf of Plaintiff

DAVID LANCE LEACH
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN STREET
PHILADELPHIA, PA 19123
    On behalf of Defendant

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section
205(g) of the Social Security Act, as amended, 42 U.S.C. §
405(g), regarding Plaintiff's application for Supplemental
Security Income ("SSI") under Title XVI of the Social Security
Act.  42 U.S.C. § 401, et seq.  The issue before the Court is
whether the Administrative Law Judge ("ALJ") erred in finding
that there was "substantial evidence" that Plaintiff was not
disabled at any time since her alleged onset date of

disability, November 18, 2013.  For the reasons stated below,
this Court will affirm that decision.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On November 18, 2013, Plaintiff, Lori Renee Lake,
protectively filed an application for SSI, initially alleging
that she became disabled on December 31, 2008, but she later
amended her alleged onset date to November 18, 2013.
Plaintiff claims that she cannot work, and has no previous
gainful employment,[1] because she suffers from various
impairments, including degenerative joint disease,
osteoarthritis, status post right and left knee total
replacements, obesity, bipolar disorder, and panic disorder.

Plaintiff's claim was denied initially on September 8,
2011 and then again on July 10, 2014.  Pursuant to Plaintiff's
July 18, 2014 written request for a hearing, a hearing was
held on July 21, 2016, and the ALJ issued an unfavorable
decision on September 8, 2016.  Plaintiff filed a Request for
Review by the Appeals Council, which denied her request on

---

[1] The record reflects that Plaintiff assists an elderly
neighbor, but there is no indication that this is considered
"substantial gainful activity," which means, for an impairment
other than blindness, performing significant physical or
mental activities or a combination of both for pay with
earnings averaging over $1,170 a month (for the year 2017).

January 10, 2017, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

3

1988).

A reviewing court has a duty to review the evidence in
its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.
1984).  "[A] court must 'take into account whatever in the
record fairly detracts from its weight.'" Schonewolf v.
Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting
Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301,
303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB,
340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record
his reasons for rejecting or discrediting competent evidence."
Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing
Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third
Circuit has held that an "ALJ must review all pertinent
medical evidence and explain his conciliations and
rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d
112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider
and weigh all of the non-medical evidence before him.  Id.
(citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.
1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful

4

court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart,

94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial

review, a district court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-

finder." Williams, 970 F.2d at 1182. However, apart from the

substantial evidence inquiry, a reviewing court is entitled to

satisfy itself that the Commissioner arrived at his decision

by application of the proper legal standards. Sykes, 228 F.3d

at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir.

1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.  Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any

substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be

expected to result in death, or which has lasted or can be

expected to last for a continuous period of not less than 12

months.  <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  Under this

definition, a Plaintiff qualifies as disabled only if his

physical or mental impairments are of such severity that he is

not only unable to perform his past relevant work, but cannot,

given his age, education, and work experience, engage in any

other type of substantial gainful work which exists in the

national economy, regardless of whether such work exists in

the immediate area in which he lives, or whether a specific

job vacancy exists for him, or whether he would be hired if he

applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis

added).

    The Commissioner has promulgated regulations[2] for

determining disability that require application of a five-step

---

[2] The regulations were amended for various provisions effective
March 27, 2017.  <u>See</u> 82 F.R. 5844.  Because the ALJ issued her
decision prior to that effective date, the Court must employ
the standards in effect at the time of her decision.

sequential analysis.  See 20 C.F.R. § 404.1520.  This five-

step process is summarized as follows:

> 1.   If the claimant currently is engaged in substantial
>      gainful employment, he will be found "not disabled."
>
> 2.   If the claimant does not suffer from a "severe
>      impairment," he will be found "not disabled."
>
> 3.   If the severe impairment meets or equals a listed
>      impairment in 20 C.F.R. Part 404, Subpart P,
>      Appendix 1 and has lasted or is expected to last for
>      a continuous period of at least twelve months, the
>      claimant will be found "disabled."
>
> 4.   If the claimant can still perform work he has done
>      in the past ("past relevant work") despite the
>      severe impairment, he will be found "not disabled."
>
> 5.   Finally, the Commissioner will consider the
>      claimant's ability to perform work ("residual
>      functional capacity"), age, education, and past work
>      experience to determine whether or not he is capable
>      of performing other work which exists in the
>      national economy.  If he is incapable, he will be
>      found "disabled."  If he is capable, he will be
>      found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of

proof.  See Wallace v. Secretary of Health & Human Servs., 722

F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of

the analysis, the burden is on the claimant to prove every

element of his claim by a preponderance of the evidence.  See

id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of degenerative joint disease, osteoarthritis, status post right and left knee total replacements, obesity, bipolar disorder, and panic disorder were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.  The ALJ then determined that Plaintiff's residual functional capacity ("RFC") rendered her capable of performing sedentary work, in jobs such as a nut sorter, cuff folder, and dowel inspector (steps four and five).

Plaintiff argues that the ALJ erred by improperly affording "little weight" to one consultative examiner's report and "some weight" to her treating primary care physician. Plaintiff further argues that the ALJ's credibility assessment is not supported by substantial evidence. Plaintiff also contends that the ALJ erred by failing to pose a proper hypothetical to the vocational expert, and that the vocational expert provided conflicting testimony regarding the use of a cane in certain jobs.

**1.    The ALJ's decision**

Among other detailed recitations of Plaintiff's testimony and the medical evidence, the ALJ noted several key events in his evaluation regarding Plaintiff's physical and mental impairments.  With regard to Plaintiff's physical impairments, in October 2012, both of Plaintiff's knees showed bone-on-bone changes.  In December 2012, Plaintiff had a total knee replacement of her right knee, and by March 2013 her right knee looked benign and was stable.  In April 2014, Plaintiff was examined by a consultative orthopedist, Dr. Juan Carlos Cornejo, who noted that Plaintiff walked with a slow gait, and even though Plaintiff brought a cane into the examination, it was not needed during the examination.  Dr. Cornejo also noted

that Plaintiff was able to use her upper extremities for reaching, she had full functionality of her hands, she would be able to handle fine and small sized objects, and she had no limitations with fingering. Dr. Cornejo found that Plaintiff's prognosis regarding her left knee was guarded, but it would most likely improve with a left knee replacement.

Over the next two years, while her right knee became asymptomatic, Plaintiff reported significant left knee pain. On March 9, 2016, Plaintiff underwent a left total knee replacement. By April 2016, Plaintiff's left knee was stable. Plaintiff attended physical therapy, but by June 7, 2016, Plaintiff's treating orthopedist noted that she was "2 months status post left total knee replacement," and she had not been doing physical therapy because she returned to work caring for an elderly neighbor.[3] (R. at 5-11 at 98.)

_____

[3] Plaintiff argues that the ALJ's finding that Plaintiff stopped physical therapy after two months was incorrect because the June 2016 office visit was three months post-surgery, and the prior records show that Plaintiff attended physical therapy for several weeks after the surgery. The Court finds that this argument is without import, for three reasons. First, the ALJ recorded and relied upon the treatment record of Plaintiff's orthopedist – the ALJ did not make that finding himself. Second, the ALJ does not suggest that Plaintiff never attended physical therapy, but noted that Plaintiff had stopped going to physical therapy for her stated reason that she needed to return to work to care for her neighbor. Third, it is the lack of physical therapy, along

10

On June 8, 2016, Plaintiff's treating internist, Dr. Nicholas DeMaria, completed a "check-the-box" form, which indicated that due to a previous left arm fracture, she could only occasionally reach in all directions, handle, finger, and push/pull with her left upper extremity, but she could continuously finger and feel with her right upper extremity, and frequently handle and occasionally push/pull and reach in all directions with her right upper extremity. Dr. DeMaria also noted that Plaintiff needed to use a cane to walk more than 30 feet. (Docket No. 5-11 at 92-97.)

As to Plaintiff's mental impairments, as of May 2010 Plaintiff reported feeling depressed and anxious, with these conditions fluctuating in severity over the years through various medications and periods of therapy. On April 21, 2014, Dr. Leland Mosby, a state consultative mental status examiner, evaluated Plaintiff. In addition to recording what Plaintiff told him, Dr. Mosby made the following findings:

> Dr. Mosby reported that the claimant was oriented to time, place and person. Her mood was sad and tearful and her affect was flat. The claimant's overall attention was found to be poor. The claimant could not do serial 7's but she could do serial 3's. Her recent memory was

---

with her progress notes, that the ALJ relies upon in determining Plaintiff's RFC – i.e., what Plaintiff's capabilities are rather than what impairments she suffers from.

found to good as she was able to remember three out of
three items after a ten minute period. Dr. Mosby stated
that claimant's social interaction was limited and her
general adaptation was considered poor. Dr. Mosby's
impressions were bipolar disorder, NOS and a panic
disorder with agoraphobia. He estimated that the
claimant's Global Assessment of Functioning (GAF) score
was 50, which according to its sole source, the
Diagnostic and Statistical Manual of Mental Disorders,
Fourth Edition, indicates that the claimant has a serious
impairment in social or occupational functioning (Exhibit
1OF).

(R. at 26; Docket No. 5-2 at 27.)

By June 9, 2015, Plaintiff asked to be put back on the
medication Concerta because of attention, focus and
concentration issues. Plaintiff reported that she was not
seeing a therapist because she was having difficulty finding
one, but she reported that she assisted an elderly neighbor,
and it was noted that Plaintiff was alert and cooperative,
with normal mood, affect, attention span and concentration.
The treatment note indicates that Concerta, a stimulant, would
not be prescribed and she was encouraged to go to counseling.

In December 2015, Plaintiff's primary care physician, Dr.
DeMaria, reported that Plaintiff told him she was having
anxiety and difficulty doing daily living activities, but on
Dr. DeMaria's examination Plaintiff's affect was calm. Dr.
DeMaria prescribed Klonopin and referred Plaintiff to
psychiatric counseling. In January 2016, Plaintiff reported

12

to Dr. DeMaria that she was having increased ADHD symptoms, and the doctor prescribed Concerta. In April 2016, Dr. DeMaria noted that Plaintiff appeared calm and rational with good eye contact. Her prescriptions for Klonopin and Concerta were renewed, and she was again referred to therapy.[4]

Based on the foregoing medical evidence, as well as evidence not specifically detailed above, the ALJ found Plaintiff to have the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she needs to use a cane with her dominant right hand for ambulation and balancing. She can occasional push and pull with the lower extremities and occasionally climb, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold and heat, wetness and humidity, and hazards such as unprotected heights and moving

_____

[4] The last note in the record from Dr. DeMaria is a June 8, 2016 progress note, which states that Plaintiff reported that her anxiety was getting worse and that she could not stand to be in crowded areas like supermarkets or on the bus. Dr. DeMaria again referred Plaintiff to counseling, re-prescribed Concerta, and increased her dosage of Klonopin. (R. at 696, Docket No. 5-11 at 59.) Plaintiff argues that this note supports Dr. Mosby's diagnosis of her panic disorder, and that the ALJ should not have afforded "little weight" to Dr. Mosby's report since it was corroborated by Dr. DeMaria. The Court addresses – and rejects – this argument below. The Court also notes that the ALJ's failure to specifically discuss this one treatment note is not singularly fatal to his ultimate conclusion that Plaintiff was not disabled. See Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").

machinery.  She is further limited to performing
unskilled work involving routine and repetitive tasks
with occasional changes in the work setting; no quota or
production based work but rather goal oriented work; and
occasional interaction with coworkers, supervisors, and
the public.

(R. at 19.)

With regard to the weight he afforded the medical

sources,  the ALJ provided "some weight" to Dr. DeMaria's

opinions, but not "greater weight" because the overall record

did not support his opinion in its entirety.  The ALJ afforded

similar weight to Dr. Cornejo's assessment.  With regard to

Dr. Mosby's opinion and his GAF assessment, the ALJ afforded

"little weight" because it was primarily based on the

claimant's subjective reports and was not consistent with the

overall record.  The ALJ summed up the reasoning behind his

RFC assessment:

> In sum, the above residual functional capacity assessment
> is supported by mild physical and clinical findings, her
> improvement with surgery; the claimant's lack of
> compliance with physical therapy; as well as improvement
> of her mental symptoms with treatment.  Weighing all
> relevant factors, the undersigned concludes that the
> claimant's subjective complaints do not warrant any
> additional limitations beyond those established in the
> residual functional capacity previously outlined in this
> decision.

(R. at 26.)

**2. Whether the ALJ properly considered the opinions Dr. Mosby and Dr. DeMaria**

A treating physician's opinions are typically entitled to "great weight," but an ALJ may reduce his reliance upon a treating physician's opinions, and afford consultative, non-treating medical sources "some," "little," or "no" weight, if those opinions are inconsistent with other medical evidence, and if he explains his reasoning. Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."); Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (holding that an ALJ "may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects").

With regard to Plaintiff's argument that the ALJ erred by

only providing "little weight" to Dr. Mosby's report,

Plaintiff contends that the ALJ failed to consider her problem

with concentration, which was found by Dr. Mosby and

corroborated with other record evidence.  Plaintiff further

argues that the ALJ rejected Dr. Mosby's diagnosis of panic

disorder with agoraphobia, which was also supported by other

record evidence.  As to the ALJ affording Dr. DeMaria's

opinions "some weight," Plaintiff argues that all of Dr.

DeMaria's observations are corroborated by other medical

evidence.

The Court does not agree that the ALJ erred in the weight

he afforded to the opinions of Dr. Mosby and Dr. DeMaria.

First, the ALJ recognized Plaintiff's panic disorder, as he

considered it to be one of Plaintiff's severe impairments.

Second, the ALJ accounted for Plaintiff's panic disorder in

her RFC by requiring only occasional interaction with

coworkers, supervisors, and the public.  Third, the ALJ

appreciated Plaintiff's concentration problem, and

accommodated for that issue through the determination that

Plaintiff had the ability to perform "unskilled" work, which

by its very definition is "work which needs little or no

judgment to do simple duties that can be learned on the job in

a short period of time."  20 C.F.R. § 404.1568.

Fourth, the ALJ does not refute the findings of Dr. DeMaria that are corroborated by other medical evidence, and indeed those corroborated opinions are the ones which the ALJ accepted.  The ALJ explained, with citation to the record, the medical findings that demonstrated Plaintiff's RFC to perform sedentary work,[5] which assessment reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a), rather than all the things she cannot do.  In other words, the ALJ properly focused on the record evidence that supported Plaintiff's abilities that formed the basis for his RFC determination, and in doing so, the ALJ sufficiently explained the record evidence that support his finding.

Consequently, the Court finds that the ALJ did not err in the weight he afforded to the opinions of Dr. Mosby and Dr. DeMaria.

---

[5] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

### 3. Whether the ALJ properly assessed Plaintiff's credibility

Plaintiff argues that the ALJ did not properly credit her testimony and complaints by improperly discounting, and selectively citing to, the reports of Dr. Mosby and Dr. DeMaria.[6] Because the Court has found that the ALJ did not improperly assess the opinions of Dr. Mosby and Dr. DeMaria, which contained reports of Plaintiff's subjective complaints, that argument cannot serve as a basis to reverse the ALJ's decision. Moreover, when an ALJ specifically identifies and explains what evidence he has found not credible and why he has found it not credible, a court must defer to the ALJ's assessment of credibility. Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted); see also SSR 96-7p ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."). The

---

[6] It does not appear that Plaintiff argues that the ALJ improperly discounted her testimony at the hearing or her self-completed function reports, which the ALJ recounts in the decision over two pages. (R. at 20-21.)

Court is satisfied that the ALJ properly considered Plaintiff's subjective complaints to her doctors in line with the medical evidence.

**4.     Whether the ALJ erred at step five**

Plaintiff argues that the ALJ erred in two ways at step five, where the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment the claimant is able to perform.  Based on Plaintiff's RFC, the VE testified that Plaintiff was capable of three jobs:  a nut sorter, a cuff folder, and a dowel inspector.

Plaintiff first argues that the ALJ erred at step five by not including a left-hand limitation found by Dr. DeMaria in Plaintiff's RFC, and if the ALJ had done so, no jobs would exist in the economy that she was able to perform.  This is because, Plaintiff argues, the VE testified that an individual who could only occasionally use their left hand for grasping could not perform any of those jobs.  Plaintiff also argues that the ALJ's failure to include the mental and concentration limitations found by Dr. Mosby in a hypothetical to the VE resulted in an improper assessment by the VE, which was then improperly relied upon by the ALJ.

Again, because the Court does not find that the ALJ erred in his RFC determination and consideration of the medical evidence, Plaintiff's quarrel with the ALJ's questions to the VE based on those assessments is without merit.

The second way that Plaintiff contends the ALJ erred at step five is by relying upon the VE's faulty testimony regarding Plaintiff's use of a cane. The VE testified that an individual could perform the three proffered jobs if she needed a cane for ambulation and balancing "as long as they weren't standing and walking – well, performing the sedentary job duties, they really don't involve that activity." Plaintiff argues that all sedentary jobs entail some standing and walking, and the VE's testimony was therefore incorrect. Plaintiff also points out that the SSA specifically notes that a claimant's use of a cane for balancing could significantly erode the occupational base, and the VE did not take that factor into consideration.

The definition of sedentary jobs, see *supra* note 4, relates that sedentary jobs can require walking and standing: "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567.

20

But "often" is not "always," and the VE testified that being a nut sorter, cuff folder, or dowel inspector does not require periods of standing or walking.

On the issue of medically required hand-held assistive devices, the Social Security Regulations provide:

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9P.

Although Plaintiff may require a cane to help her balance, the medical evidence does not show that Plaintiff has "significant involvement of both lower extremities" due to a

neurological impairment, and her knees, particularly her right knee, have significantly improved through the total knee replacement surgeries.[7]  Additionally, even where balance is an issue, the occupational base may be eroded, but not automatically, and the regulations direct an ALJ to consult a VE on the issue, which is exactly what the ALJ did here.  See also Smelly v. Commissioner of Social Sec., 2013 WL 3223000, at *7 (D.N.J. 2013) (citing SSR 96-9p) (stating that a cane does not automatically erode a claimant's sedentary occupational base significantly); Dye v. Commissioner of Social Sec., 2009 WL 3242078, at *6 (D.N.J. 2009) ("In making the step five determination, the ALJ considered that Plaintiff would be capable of only sedentary jobs, thus reflecting a view of Plaintiff's difficulties consistent with the prescription of a cane in April of 2004.").

Consequently, the Court does not find that the ALJ erred at step five in either of the ways argued by Plaintiff.

---

[7] In April 2014, before Plaintiff's total knee replacement of her left knee, Dr. Cornejo noted that even though Plaintiff brought a cane into the examination, it was not needed during the examination.  As of June 2016, Dr. DeMaria reported that Plaintiff needed to use a cane to walk more than 30 feet, and Plaintiff had returned to work caring for an elderly neighbor.

## III. Conclusion

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal that applies to the assessment of all of the other standards:  A district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ). The Court finds in this case the ALJ's determination that Plaintiff was not totally disabled as of November 18, 2013 is supported by substantial evidence.  The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date:  March 14, 2018              s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.